1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF COLUMBIA

3

4    ----------------------------------  :
     UNITED STATES OF AMERICA,           :  Case No. 12-CR-163
5                                        :  August 14, 2012
                 Plaintiff,              :  Tuesday
6                                        :
     v.                                  :  8:39 a.m. - 9:53 a.m.
7                                        :
     KRISTEN M. JASPER,                  :
8                                        :
                 Defendant.              :
9    ----------------------------------  :

10

11    TRANSCRIPT OF PLEA BEFORE THE HONORABLE BERYL A. HOWELL, UNITED
                      STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15   For the Plaintiff:   MS. ELLEN C. EPSTEIN and MR. PHILIP KROOP
                          Washington, DC
16
     For the Defendant:   MR. JONATHAN JEFFRESS:
17                        Washington, DC

18

19

20   Court Reporter:      Kellie M. Humiston, RMR, CRR
                          Room 6720, U.S. Courthouse
21                        Washington, DC 20001
                          (202) 354-3187
22

23

24

     Proceedings reported by machine shorthand, transcript
25   produced by computer-aided transcription.

1                       P R O C E E D I N G S

2

3           THE CLERK:  Matter before the Court, criminal case

4    number 12-163, United States of America versus Kristen M. Jasper.

5    Miss Epstein representing the Government, along with Mr. Kroop at

6    the Government's table.  Mr. Jeffress representing the defendant is

7    not present yet, Your Honor.

8           THE COURT:  All right.  Well, good morning, Miss Jasper.

9    We will wait for defense counsel to arrive.  I have a jury that I

10   have to bring out at 9:00 and another motions hearing.  So as soon

11   as he gets here, we'll start.  So everybody just make themselves at

12   home while we're waiting.

13          Miss Jasper, did you have a question?

14          THE DEFENDANT:  He doesn't think he's supposed to meet

15   me here until 9:00, and so I don't have a phone.  Is there any way

16   to get ahold of him in any regard?

17          (Pause in proceedings)

18          (Recess:  8:54 a.m. - 9:16 a.m.)

19          THE CLERK:  Calling the criminal case number 12-163,

20   United States of America versus Kristen M. Jasper.  Miss Epstein

21   and Mr. Kroop representing the Government, Mr. Jeffress

22   representing the defendant.

23          THE COURT:  This is the second call for the case.  So

24   I've already heard -- I've already heard the names of all the

25   counsel.  Welcome, Mr. Jeffress.  Glad to see you.

1        MR. JEFFRESS:  Thank you, Your Honor.  I'm sorry.  I saw

2   the original notice for 9:30.  I must have missed the one pushing

3   it back to 8:30.  I apologize.

4        THE COURT:  All right.  We sent e-mail notification.

5        MR. JEFFRESS:  Yes, I'm sure you did.

6        THE COURT:  I understand this morning that Miss Jasper

7   is going to enter a plea of guilty to a felony information.

8        MR. JEFFRESS:  Yes.

9        THE COURT:  Is that correct?  All right.  Miss Jasper,

10  could you please come forward?

11       MR. JEFFRESS:  Your Honor, I also -- I do want to

12  say a couple things about the plea just to inform the Court a

13  couple of things that might not be obvious from the papers.

14       THE COURT:  Sure.

15       MR. JEFFRESS:  Your Honor, may I grab my documents?

16       THE COURT:  Yes.

17       MR. JEFFRESS:  Your Honor, I'm sure the Court's reviewed

18  the agreement.  These -- this is a -- these cases that -- involving

19  the Office of Personnel Management, there's been a number of them.

20  I've had one before.  I think there's probably -- Miss Chubin

21  Epstein can say better than me.  There's probably been a dozen or

22  more in this district involving the same -- essentially the same

23  fact pattern and the same offense and the same -- same plea deal.

24  It's -- there have been a number of these, and this will --

25       THE COURT:  So what relevance does that have to this

1    case?

2              MR. JEFFRESS:  Well, the standard -- the plea is

3    standard.  And the way the Government does it in this case is to --

4    is a pre-indictment deal where the Government's allocution is

5    capped.

6              THE COURT:  That's clear from the papers.

7              MR. JEFFRESS:  That's right.  I want the Court to

8    know --

9              THE COURT:  What's unusual that you need to share with

10   me that's not in the papers?

11             MR. JEFFRESS:  The $109,000 loss figure is -- I don't

12   get discovery on this.  I want the Court to know that, you know, I

13   have not been able to do any independent investigation of that

14   figure.  I -- I can't say I've -- I'm -- we're accepting the

15   Government's word here that this is the right amount, but I want

16   the Court to know, because it could be under the impression that I

17   have, I've received no discovery substantiating that figure, I've

18   got no independent basis for -- for knowing it to be true.  That's

19   one thing.

20             THE COURT:  Well, I will not determine forfeiture until

21   the time of sentencing.

22             MR. JEFFRESS:  Well, it's not forfeiture.  It's

23   restitution, hence the amount of loss.

24             THE COURT:  Oh, I see.  You're right.

25             MR. JEFFRESS:  Yes.

1          THE COURT:  Order of restitution.

2          MR. JEFFRESS:  And it's also amount of loss pushing it

3    over the -- pushing it over the $70,000 figure.  So just for the

4    record, I don't want -- I just want the Court to know I haven't

5    done any investigation, because I think this could be misleading

6    otherwise.

7          The other thing, Your Honor, is obviously Miss Jasper, I

8    think, she's -- she's pregnant and she's due on November --

9    Thanksgiving.  I think there are various issues here, you know,

10   that we plan to raise at sentencing about -- about how the -- her

11   family circumstances could affect, you know, how that fits into the

12   3553 factors, you know, whether the Court should weigh that and so

13   forth.

14         Now, I have not asked the Government, this

15   provides for no departures, but in the past I've had judges

16   say, you know, well, you know, you can't bring up her family

17   circumstances, because that's a departure, and, you know, the

18   guideline -- and you're not supposed to move for a departure

19   here.

20         My view of that and, you know, I've researched it,

21   some circuits have said, you know, departures are

22   basically -- you do it all under 3553 now.  So I just don't

23   want anyone to claim surprise when I say, you know, this

24   raises issues about breast feeding, this raises issues about

25   separation from her baby, everything else, and that that

1    should be something the Court should consider under the 3553

2    factors.  And I do plan on arguing that at sentencing, and I

3    just want everyone to know that I do.

4         THE COURT:  Well, is there a provision in this plea

5    agreement that you're not allowed to make an argument to the Court

6    as I'm evaluating the factors under 18 USC 3553?

7         MR. JEFFRESS:  No.  In fact, the opposite; it says I

8    can.  I just -- I just don't want there to be any surprise to the

9    Government that I'm going to argue her family circumstances are a

10   reason for.  In the past I've had judges say, well, since there are

11   no departures, but that -- it's not a departure formally.  Some

12   circuits, I think, have said departures aren't really how you do it

13   anymore, you do it under 3553, and that's what I plan on doing at

14   sentencing.

15        THE COURT:  It's the Seventh Circuit who said that

16   departures are obsolete.

17        MR. JEFFRESS:  I think one other.

18        THE COURT:  But there are -- it is still one of the

19   three-part series that we have to consider in sentencing under the

20   departure provisions.

21        MR. JEFFRESS:  I just want my intention to be up front

22   with that, Your Honor.  Thank you.

23        THE COURT:  All right.  Miss Jasper, could you step

24   forward, please?  During the course of this hearing, I have to ask

25   you a series of questions, so you're going to be standing for a

1    little while.  If it gets uncomfortable for you, just let me know,

2    and I'll give you a time to sit down.

3            This is a very important hearing and your answers are

4    very important so that I can make sure that you understand what's

5    going on today, so I'm going to ask my courtroom deputy to

6    administer the oath to you.

7            THE CLERK:  Miss Jasper, would you please raise your

8    right hand.

9                          **KRISTEN M. JASPER**

10   having been called as a witness for and on behalf of the

11   Defendant, and having been first duly sworn by the Deputy

12   Clerk, was examined and testified as follows:

13           THE DEFENDANT:  Yes.

14           THE CLERK:  Thank you.

15           THE COURT:  Miss Jasper, you're now under oath, and that

16   means that if you do not answer my questions truthfully, you could

17   be prosecuted for perjury or giving a false statement, and any

18   false statements that you make here today could be used against you

19   in that prosecution.  Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Now, as I mentioned, this is a very

22   important hearing where you have to decide whether or not you're

23   going to accept the plea agreement, plead guilty to the charge

24   against you that has been filed in this information, or whether or

25   not you want to go to trial.  I'm going to ask you a series of

1    questions to make sure that you understand the rights that you're

2    giving up as part of this hearing.  And if at any time you don't

3    understand any of my questions or feel like you need a moment to

4    think about it or you'd like to talk to your lawyer about it,

5    please just let me know --

6              THE DEFENDANT:  Okay.

7              THE COURT:  -- and I'll give you a moment to talk to

8    your lawyer.  Okay?

9              THE DEFENDANT:  (Nodding head).

10             THE COURT:  What is your full name?

11             THE DEFENDANT:  Kristen Marie Jasper.

12             THE COURT:  How --

13             MR. JEFFRESS:  Do you want to place her under oath?

14             THE COURT:  What?

15             MR. JEFFRESS:  Do you want to place her under oath?

16             THE COURT:  She's been placed under oath, Mr. Jeffress.

17             MR. JEFFRESS:  Oh, you did.  Okay.

18             THE COURT:  Catch up with us.  I know you've been

19   running late this morning.

20             MR. JEFFRESS:  Yes.

21             THE COURT:  All right.  Miss Jasper, how old are you?

22             THE DEFENDANT:  28.

23             THE COURT:  How far did you go in school?

24             THE DEFENDANT:  Bachelor's.

25             THE COURT:  From where?

1          THE DEFENDANT:  Brigham Young University, Hawaii campus.

2          THE COURT:  And so you can read and write, Miss Jasper?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Where were you born?

5          THE DEFENDANT:  Orem, Utah.

6          THE COURT:  Have you taken any alcohol or drugs in the

7  last 48 hours or any medicine that could affect your ability to

8  understand what you're doing by pleading guilty here today?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you received any treatment recently for

11  any type of mental illness or emotional disturbance or addiction to

12  narcotic drugs of any kind?

13          THE DEFENDANT:  No.

14          THE COURT:  Now, have you received a copy of the

15  information that the Government has filed against you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And have you read the charges against you?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And have you had an opportunity to fully

20  discuss them with your lawyer?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Miss Jasper, are you completely satisfied

23  with the services of your lawyer in this case?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And do you feel like you've had enough time

1    to talk to your lawyer about the case, about the plea agreement in

2    the case and whether or not you should accept the plea offer?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Mr. Jeffress, do you have any question about

5    Miss Jasper's competence at this time?

6              MR. JEFFRESS:  No, Your Honor.  Thank you.

7              THE COURT:  Government counsel, do you have any question

8    about the defendant's competence to plead at this time?

9              MS. EPSTEIN:  No, Your Honor.

10             THE COURT:  I find that Miss Jasper is fully competent

11   and capable of entering an informed plea.

12             Now that -- now I'm going to talk to you about a

13   number of the constitutional rights that you'll be give --

14   you'll be giving up by entering a plea of guilty.  Again,

15   some of this is fairly technical legal language.  If you have

16   a question about it, don't hesitate to say, "Judge, I need a

17   second to talk to Mr. Jeffress."  Okay?

18             THE DEFENDANT:  We'll do.

19             THE COURT:  All right.  Now, do you understand that

20   you're pleading guilty today to an information?  It's not an

21   indictment, it's called an information.  And this means the

22   Government has not presented it to a grand jury.  Do you understand

23   that you have a right to a grand jury indictment in which the

24   Government convinces 12 grand jurors out of at least 16 that there

25   is probable cause that this crime was committed and that you

1   committed it?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you give up that right to a grand

4   jury indictment?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And I see that there is a waiver of

7   indictment form that I have executed.  You also have a right to

8   plead not guilty and to have a jury trial in this case.  And that

9   means that 12 citizens of the District of Columbia would sit in

10  that jury box, as you saw this morning with another trial, and

11  determine your guilt or innocence based upon the evidence presented

12  in the courtroom.  Do you understand you have a right to a jury

13  trial?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And do you give up your right to a jury

16  trial in this case?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Now, if you have a trial, you also have a

19  right to be represented by your lawyer at the trial and at every

20  other stage of the proceeding.  And if necessary, the Court will

21  appoint a lawyer for you.  Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And if you had a trial, you'd have the right

24  through your lawyer to confront and cross-examine any witnesses

25  against you.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And if you had a trial, you'd have the right

3    to present your own witnesses and the right to subpoena witnesses

4    to compel them to come here and testify in your defense.  You would

5    also have the right to present evidence on your own behalf and you

6    would even have the right to testify on your own behalf only if you

7    wanted to.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  You would -- you are not required to testify

10   or present any evidence on your own behalf, because you're presumed

11   innocent and it's the Government's burden to prove your guilt.  Do

12   understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that if you went to trial

15   and were convicted, you would have a right to appeal your

16   conviction to the Court of Appeals and to have a lawyer help you

17   prepare your appeal?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And do you understand that by pleading

20   guilty, you're giving up all of your rights to appeal your

21   conviction of guilt in this case except in a collateral proceeding

22   if new and currently unavailable information becomes known to you?

23   Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you plead guilty

1   in this case and I accept your guilty plea, you will give up all of

2   the rights I've just explained to you and there will be no trial?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And do you understand the offense to which

5   you're pleading guilty is a felony offense and that if your plea is

6   accepted and you're found guilty of that offense, then that finding

7   may deprive you of valuable civil rights, such as the right to

8   vote, the right to hold public office, the right to serve on a jury

9   and the right to possess any kind of firearm?  Do you understand

10  that?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  Now, having discussed your rights with you,

13  do you still want to plead guilty and to give up your rights to a

14  trial and all of the rights I've just explained to you that you

15  would have if your case went to trial?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Now, the prosecutor has given to me a

18  document called a Statement of the Offense.  Have you had an

19  opportunity to review this?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And have you discussed it fully with your

22  lawyer?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And I see that on page 4 of this document

25  under "Defendant's Acceptance", what appears to be your signature.

1  Is that your signature?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And does this Statement of Offense fully and

4  accurately set forth the facts as you know them?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And did you in fact while you were employed

7  as a special agent of the U.S. Office of Personnel Management, on

8  April 29th, 2011, knowingly and willfully make a false statement in

9  a report of investigation for background information of a person

10 with the initials TG that you had interviewed a person with the

11 initials NG when you -- about TG when you in fact had not done that

12 interview?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  You may take a break and be seated

15 for a second.  I'll ask --

16         MR. JEFFRESS:  Thank you, Your Honor.

17         THE COURT:  -- the Government lawyer to stand and set

18 forth the elements of the offense.  Miss Jasper, listen carefully

19 to what the prosecutor has to say about what the Government would

20 prove as the elements of this legal charge against you.

21         MS. EPSTEIN:  Thank you, Your Honor.

22         THE COURT:  Please proceed.

23         MS. EPSTEIN:  Good morning.

24         THE COURT:  Good morning.

25         MS. EPSTEIN:  The Government would prove through

1  competent evidence beyond a reasonable doubt that the defendant

2  made a false statement.  In order to establish that, there would be

3  five elements that the Government would need to prove:  first, that

4  on or about the date specified, the defendant made a statement or

5  representation; second, that the statement or representation was

6  material; third, that the statement or representation was false,

7  fictitious or fraudulent; fourth, that the false, fictitious or

8  fraudulent statement was made knowingly and willfully; and finally,

9  fifth, that the statement or representation was made in a manner

10  within the jurisdiction of the Government of the United States.

11           THE COURT:  Thank you.  You may be seated.

12           MS. EPSTEIN:  Thank you, Your Honor.

13           THE COURT:  Miss Jasper, Mr. Jeffress, please come

14  forward again.  And Miss Jasper, having heard all those elements of

15  the charge against you, do you understand the charge against you?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Now, the parties have also submitted a

18  written letter outlining the plea agreement that your lawyer

19  referenced briefly this morning.  Do you have a copy of that plea

20  agreement?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And have you read it carefully?

23           THE DEFENDANT:  I have.

24           THE COURT:  And have you reviewed it closely with your

25  lawyer?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you have any questions about any of

3    the provisions in this plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Mr. Jeffress, could you please summarize

6    briefly the terms of the plea agreement?

7          MR. JEFFRESS:  Yes, Your Honor.  It's a plea to one

8    count of Making a False Statement in violation of 18 USC 3001.  The

9    maximum sentence is five years imprisonment, a fine of $250,000 or

10   twice -- or a fine of twice the pecuniary gain or loss, which I

11   think is under 250, and a hundred dollar special assessment and a

12   three-year term of supervised release and restitution.

13          Your Honor, essentially Miss Jasper understands

14   the guidelines calculation and her three-level reduction for

15   acceptance of responsibility for taking the plea.  The

16   parties are allowed to present arguments to the Court under

17   3553 about what the appropriate sentence is.  She does have

18   to undergo a mandatory debriefing, which we've done in the

19   past, at the time of sentencing.

20          Mr. Jasper -- Miss Jasper understands that there's

21   an appellate waiver in this case such that we could only

22   appeal if the Court imposed an illegal sentence above the

23   statutory maximum.

24          The Government's agreeing to leave her out and

25   allow voluntary surrender unless something changes, she

1    commits some sort of violation, and that this is the complete

2    agreement.

3              THE COURT:  Okay.  Miss Jasper, do you have any

4    confusion or questions about any parts of this agreement?

5              THE DEFENDANT:  No.

6              THE COURT:  Okay.  Now, even though the plea agreement

7    sets forth the penalties that apply to the -- to the statute to

8    which you're pleading guilty, it's part of this plea hearing that I

9    have to ensure that you understand it and review it with you.

10             So as you've just heard your lawyer say, if I

11   accept your plea of guilty in this case, you could receive a

12   maximum sentence of five years imprisonment, a fine of

13   $250,000, or a fine of twice the pecuniary gain or loss.

14   You'd also have to pay a $100 special assessment, and are

15   subject to up to a three-year term of supervised release.

16   You are also subject to an order of restitution and an

17   obligation to pay any applicable interest or penalties or

18   fines or restitution -- on restitution not timely made.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And do you understand what supervised

22   release means?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  And in terms of restitution, you

25   understand that as part of your sentence, you will be ordered to

1  pay restitution, and according to your plea agreement, it's in the

2  amount of 109,000 to the U.S. Office of Personnel Management as a

3  result of the crime?  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Now, the order is signed by me, so perhaps

6  you can at the -- before I conclude this hearing, I'm going to ask

7  the Government to tell me how we come up with $109,000 in terms of

8  the restitution just so I can be prepared at the time of

9  sentencing.  You may as well start educating me now.

10           In addition to the statutory parameters that apply

11  to your sentence, I'm also obligated to calculate and

12  consider the applicable sentencing range under the guidelines

13  manual, which applies in every federal criminal case.  Have

14  you and your attorney talked about the sentencing guidelines

15  and how they might apply in your case?

16           THE DEFENDANT:  We have.

17           THE COURT:  And you understand that based upon what we

18  know about your criminal history, your estimated guideline offense

19  level is 16.  The Government's agreed to a reduction of three

20  levels for your acceptance of responsibility and cooperating in the

21  debriefing, resulting in a total offense level of 13 and a

22  guideline range of 12 to 18 months with an applicable fine range of

23  3,000 to $30,000.  Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And per your agreement in paragraph 10, the

1  parties have also agreed that a sentence within this range would

2  constitute a reasonable sentence, but either party may seek a

3  sentence outside that range.  Do you understand that?

4           THE DEFENDANT:  I do.

5           THE COURT:  The Government has agreed not to seek a

6  sentence above five months of incarceration followed by five months

7  of home detention.  Do you understand that despite what the

8  agreements are in the plea agreement, that it is up to the judge,

9  me --

10          THE DEFENDANT:  Yes.

11          THE COURT:  -- to decide what your sentence will be?

12          THE DEFENDANT:  Uh-huh.

13          THE COURT:  And do you understand that I will not be

14 able to determine what the guideline sentence is for your case

15 until after the pre-sentence investigation is done and the

16 pre-sentence report is prepared and submitted to me?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand that the sentence

19 imposed may be different from any estimate that the Government has

20 made or your -- your counsel has made as reflected in this plea

21 agreement?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And do you also understand that after I have

24 decided what the guidelines are, I have the authority in some

25 circumstances to impose a sentence that is more severe or less

1    severe than the sentence recommended by the guidelines?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, in determining your sentence, I'm also

4    obligated to consider the sentencing factors that are set forth in

5    the statute, 18 USC 3553(A), which you heard some reference to this

6    morning.  This statute requires that judges consider the nature and

7    circumstances of the offense, the history and characteristics of

8    the defendant, the need for the sentence imposed to reflect the

9    seriousness of the crime, and various other factors, the kinds of

10   sentences available, the need to avoid unwarranted sentencing

11   disparities among defendants with similar records who have been

12   found guilty of similar conduct, and the need to provide

13   restitution to any victims of the offense.  Do you understand that

14   I have to consider all of those factors as well?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And do you have -- do you understand that

17   you have no right to withdraw your plea simply because your

18   sentence may be more severe than you would have liked?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, Miss Jasper, has anyone, including your

21   attorney, the police, the prosecutor, any other person with whom

22   you've come in contact since your arrest promised or suggested to

23   you that merely because you are pleading guilty, I will give you a

24   lighter sentence?

25             THE DEFENDANT:  No.

1          THE COURT:  And has anyone forced, threatened or coerced

2     you in any way into entering this plea of guilty?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand that the agreement reached

5     in this case resulted from negotiations between your attorney and

6     the Government's attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anyone made any promises to you in

9     connection with your guilty plea other than those contained in the

10    plea letter as stated in open court here today?

11         THE DEFENDANT:  No.

12         THE COURT:  Has anyone made any promises to you as to

13    what sentence I will impose in this case if I accept your guilty

14    plea?

15         THE DEFENDANT:  No.

16         THE COURT:  And do you understand that sitting here

17    today, I don't know what sentence I would impose in your case?  Do

18    you understand that?

19         THE DEFENDANT:  Yes, I do understand.

20         THE COURT:  Are you entering this plea of guilty

21    voluntarily and of your own free will because you are guilty and

22    for no other reason?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And is there anything you do not understand

25    about this proceeding or about your plea in this case?

1          THE DEFENDANT:  No.

2          THE COURT:  How do you plead to the charge against you,

3   guilty or not guilty?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  I'm satisfied that the defendant,

6   Miss Jasper, is fully competent and capable of making a decision

7   today, that she understands the nature of the charges and the

8   consequences of the plea, that the plea is a knowing and voluntary

9   plea, that she is acting of her own free will, and that there is an

10  adequate factual basis containing each of the essential elements of

11  the offense for her plea; therefore, I accept the plea and the

12  defendant, Miss Jasper, is now adjudged guilty of that offense.

13  You may be seated.

14         MR. JEFFRESS:  Thank you.

15         THE COURT:  Before we turn to setting a sentencing date,

16  which I know may be a little bit complicated in this situation,

17  could you please come forward and explain to me how the 109,000

18  figure arises?

19         MS. EPSTEIN:  Yes, Your Honor.

20         THE COURT:  Particularly when there's a period of

21  incarceration that the Government is also requesting, so paying

22  restitution and serving a period of incarceration can get

23  complicated.

24         MS. EPSTEIN:  It can, although as the Court is well

25  aware, it's done in many cases.  In this -- in these particular

cases, as defense counsel's well aware, because he's represented other background investigators in these cases, the way the loss amount is calculated is based on the cost to OPM of having to essentially redo all the work, but it's more than simply redoing the work and paying whatever Ms. Jasper was making as her salary. It also involves going back and reopening closed cases, which involves many administrative hurdles.

There are numerous federal agencies and contractors that request background investigations by OPM, so in order to reopen and rework cases during the period of falsification, OPM needs to reach out to those agencies, get the files back, reopen those files, send agents into the field to reinterview all of those people who were supposedly interviewed and recheck all of the records that were supposedly reviewed by the background investigator. And then once discrepancies are found and falsifications are found, new entries need to be made, new reports need to be written, those reports need to be provided back to the requesting agencies and the requesting companies.

So as the Court can imagine, this involves quite a large effort by many people. And the people involved in this effort, the recovery agents as they're called, keep track of their time, keep track of their travel to interview people, just as Miss Jasper was supposed to have done in the first place, and they end up calculating based on each of the

1   recovery agent's time, travel, et cetera, benefits, I think,

2   also go into it, what the overall cost is.  There are

3   spreadsheets that OPM provides and can provide.

4         What we typically do in these cases is prior to

5   sentencing, we provide an affidavit from an OPM agent that

6   sets forth in greater detail how these costs are calculated.

7   And --

8         THE COURT:  So do you review every -- every background

9   investigation that a defendant in one of these cases has performed

10  or do you just redo --

11        MS. EPSTEIN:  The way --

12        THE COURT:  -- redo the targeted investigations

13  where the debriefing of the defendant has indicated there was

14  some falsehood?

15        MS. EPSTEIN:  It's a more complicated answer than that.

16  This particular defendant has not debriefed yet.  If a defendant

17  does come in early and debrief before the recovery effort is

18  complete, then OPM is able to adjust and target certain time

19  periods; however, that did not occur in this case.

20        So in a case where the defendant does not come in

21  and debrief and indicate the time period of falsification,

22  what OPM is required to do statutorily as well as by their

23  regulatory rules is go back to a specified time period, and

24  it's generally six months prior to the first falsification

25  that's identified through their general integrity program.

1          So in this case, the time period that had to be

2     redone was her work between August 2010 and June 2011 or

3     thereabouts.  So -- so the time period will vary, and, again,

4     this involves open cases as well as closed cases, but it's

5     not the entire time that she was working for OPM.  And it's

6     not a more targeted time, because we had not spoken to her,

7     she had not --

8          THE COURT:  Right.

9          MS. EPSTEIN:  -- told us what the time was.

10         THE COURT:  So -- so it's not $109,000 in every single

11    one of these cases?  It's really dependent on what the debriefing

12    shows and -- and, I guess, the amount of work the particular

13    background investigator did.  Is that right?

14         MS. EPSTEIN:  To some extent it depends on the amount of

15    work they did.  To some extent it depends on where -- what region

16    they were assigned to and where, you know, they had to travel to to

17    interview people.

18         THE COURT:  Right.  So even though the plea agreement

19    calls for $109,000, that's based on not having the opportunity to

20    debrief Miss Jasper yet?  So once you debrief her, is that amount

21    going to go down or not?

22         MS. EPSTEIN:  No.  In this -- what we've done in other

23    cases, and in this particular case we also extended this

24    opportunity, was, you know, sometimes if the recovery effort is not

25    yet complete, we've reached out and tried to, you know, get that

1    information, get a defendant to come in, debrief so that we can

2    target the recovery effort.

3            We reached out, but that did not occur in this

4    case, she did not come in, so the recovery effort was

5    completed without her input.

6            But I'll just say for the Court, I mean, again,

7    we've done probably 14 of these cases in this courthouse at

8    this point.  The --

9            THE COURT:  This is my only one.

10           MS. EPSTEIN:  Right.  It is.  Your colleagues have done

11   others.  The loss amounts have ranged from approximately, you know,

12   probably 30 some thousand dollars up to I think 192,000 was the

13   highest so far.  And that loss amount has been accepted by your

14   colleagues as, you know, both the loss amount for sentencing

15   guideline purposes and the restitution amount in these cases with

16   guilty pleas.

17           THE COURT:  All right.  Okay.  Thank you.

18           MS. EPSTEIN:  You're welcome.

19           THE COURT:  Let's set a sentencing date.  I think if

20   the -- Miss Jasper's due date is at the end of November, what would

21   you all suggest?

22           MR. JEFFRESS:  Your Honor, I'll be honest, we have put a

23   lot of thought to this, but we haven't really come to a conclusion.

24   I mean, you know, and I'm certainly no doctor or expert in this.

25   Her due date is Thanksgiving.  I would sort of defer about what's

1   best.  I mean, I think -- I guess obviously any time before that

2   wouldn't work.  In terms of how long afterwards, I would think at

3   least a couple months after that would be -- would be best.  I know

4   that's asking for a while, but I mean, we're (pause) --

5           THE COURT:  I was thinking of having the sentencing date

6   at the end of October, depending on the time that she -- you know,

7   and then we can postpone the voluntary surrender date.

8           MR. JEFFRESS:  Yeah.  Your Honor -- Your Honor, she's

9   from Idaho, so she has to fly for this, and I'm not sure if

10  traveling that close to -- to her due date is workable.

11          THE COURT:  Oh, she's still -- she's living far away.  I

12  see.

13          MR. JEFFRESS:  Right.  She lives in Idaho, so it's

14  quite a long flight.  You have to go back to Seattle and then

15  from Seattle all the way to --

16          THE COURT:  Have the parties talked about this?

17          MR. JEFFRESS:  We -- we talked about flexibility, and it

18  (pause) --

19          THE COURT:  What's the Government's position?

20          MS. EPSTEIN:  Your Honor, the Government's position is

21  that we are willing to defer sentencing to a reasonable time period

22  after the birth of her child, if that's what the defense requests.

23          MR. JEFFRESS:  I don't know if the Court wants to move

24  its calendar, but I mean, I --

25          THE COURT:  I do.

1    MR. JEFFRESS:  But I would think three -- three months

2    would be about, you know, time for her to bond and sort of -- you

3    know, I would -- I would ask for March.  Yes.

4    THE COURT:  I'm going to set this -- I prefer to set

5    this in mid October and then deal with the surrender date as

6    appropriate.

7    MR. JEFFRESS:  I don't think she can travel at that

8    point, though.

9    THE COURT:  I think the last month you're unable to

10    travel.  What has your -- what has your doctor said?

11    THE DEFENDANT:  32 weeks -- sorry.  I apologize.

12    I'm -- this is my first baby, and I don't travel a lot.

13    Regardless, they say not more than six weeks before your due date

14    or so.  My due date hasn't changed as of yet.  I've got more

15    appointments, and that can either be sooner or later.  I'm at the

16    moment due the 21st of November.  Flying is incredibly

17    uncomfortable just coming here right now.  It is a long flight

18    across the country, but -- it would be nice to wait, of course, but

19    I understand that what needs to be done needs to be done, so -- I

20    didn't plan on all of this, so (pause) --

21    THE COURT:  All right.  I -- I will set it, then,

22    because I don't think if I set it in September, this will give the

23    probation department sufficient time to complete its pre-sentence

24    investigation, so that's -- so that's not going to work, therefore,

25    I will set it for -- I think I'll set it for beginning of February.

1           MR. JEFFRESS:  Thank you, Your Honor.

2           THE COURT:  I mean, the surrender date can be, you know,

3 organized.

4           Could you give me a date in February, Teresa, a

5 Friday in February?

6           THE CLERK:  You said the beginning of February?  How

7 about the 8th?  8th of February.  It's a Friday.

8           THE COURT:  Okay.  February 8th.

9           MR. JEFFRESS:  That's fine with the defense.

10           THE COURT:  February 8th at 9:30.  All right.

11           MR. JEFFRESS:  Thank you.

12           THE COURT:  Now, I understand that according to the plea

13 agreement, the Government has no objection to the defendant

14 remaining released on -- on bail, or just on her own recognizance?

15 Is that correct?

16           MS. EPSTEIN:  That is correct, Your Honor.  We would

17 request the conditions set forth in the Pretrial Services report.

18           THE COURT:  Okay.  Well, Miss Jasper, I will sign the

19 bond form that allows you to stay out of jail pending sentencing,

20 but I need to caution you about your conduct, now that you have

21 pled guilty, while you are on release pending sentencing.  You're

22 required to appear here for sentencing on the sentencing date.  If

23 you fail to appear as required, that's a separate criminal offense

24 for which you could be sentenced to imprisonment.  If you fail to

25 appear for -- for sentencing, you could be subject to a fine or

1   imprisonment for an additional term of years that would be

2   consecutive to any sentence you received for the offense to which

3   you pled guilty today.  Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  If you violate any of the conditions of your

6   release, you would be subject to revocation of the release and a

7   separate prosecution for contempt of court.  Do you understand

8   that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  If you are convicted of an offense while you

11  are released, then in addition to the sentence imposed for that

12  offense, you could be sentenced up to an additional period of time.

13  Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And any term of imprisonment for an offense

16  committed while on release could be consecutive to the sentence

17  that you received for any other offense.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  All right.  I think that's it.

20          MR. JEFFRESS:  Thank you.

21          THE COURT:  Thank you.

22          THE DEFENDANT:  Thanks.

23          MS. EPSTEIN:  Thank you, Your Honor.

24          THE COURT:  You're excused.

25          (Proceedings adjourned at 9:53 a.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER


I, Kellie M. Humiston, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


Kellie M. Humiston

November 15, 2012
_____
Dated